JOHN H. BALSEWICZ,
*also known as* Melissa Balsewicz,

Plaintiff,

v.                                                      Case No. 25-cv-581-pp

WISCONSIN DEPARTMENT OF CORRECTIONS, *et al.*,

Defendants.

## ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

Plaintiff John H. Balsewicz, also known as Melissa Balsewicz, who is incarcerated at Kettle Moraine Correctional Institution and is unrepresented, filed a civil rights complaint under 42 U.S.C. §1983. The plaintiff has paid the full filing fee. This decision screens the complaint, dkt. no. 1.

## I.     Screening the Complaint

### A.     Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d

1

714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him or her of a right secured by the Constitution or the laws of the United States, and that whoever deprived him or her of this right was acting under the color of state law. <u>D.S. v. E. Porter C'nty Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. C'nty of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The plaintiff names as defendants the Wisconsin Department of Corrections (DOC), DOC Secretary Kevin Carr, DOC Secretary Jared Hoy, DOC Mental Health Director Kevin Kallas, Kettle Moraine Warden Jon Noble, Security Director Thomas Pollard, Corrections Program Supervisor Cory Sabish, Corrections Program Supervisor Brian Lemke, Psychological Services Unit Director Maricela Gamboa, Social Worker Chelsey Pritchard, Officer Taylor

Mangan, Officer Alexander Engman, Officer Jamie Shay, Officer Tutas, Officer Sossing and Officer Tolle. Dkt. No. 1 at 1, 4-5 ¶¶21-36.

The plaintiff was transferred to Kettle Moraine Correctional Institution in February 2022 and currently is confined there. Id. at ¶76. The plaintiff was incarcerated at Kettle Moraine during the events described in the complaint.

          1.     *Diagnosis and Accommodations*

The plaintiff allegedly identifies as a transgender female and was diagnosed with gender dysphoria in 2017. Id. at ¶¶37, 68. In 2018, the plaintiff allegedly began gender affirming treatments, including hormonal therapy,. Id. at ¶70. Gender dysphoria and distress allegedly cause her anxiety, depression, self-harm and suicidal ideation. Id. at ¶62. Doctors evaluating the plaintiff allegedly noted that the plaintiff suppresses distress due to past experiences with DOC doctors which affects the way she thinks, sleeps, socializes and works. Id.

While at Kettle Moraine, the plaintiff allegedly requested accommodations under the World Professional Association for Transgender Health, Standards of Care (WPATH). Id. at ¶¶38-39. The requested accommodations included that WPATH's recommendations apply equally to incarcerated individuals; that correctional staff and health care professionals receive training on gender diversity, recommend and support gender affirming surgical treatments, address individuals by their chosen names and pronouns and make housing decisions based on housing preference, gender identity, expression and safety considerations rather than solely anatomy and sex assigned at birth; and that there is access to the private use of showers and toilet facilities upon request. Id. at ¶¶40-45.

The plaintiff also allegedly requested accommodations under the Rehabilitation Act (RA) and the Americans with Disabilities Act (ADA). Id. at ¶¶46-47. The plaintiff states that defendant Lemke denied her accommodations under the RA and ADA such as female housing, single cell and the private use of toilet and shower. Id. at ¶48.

### 2. *Housing and Program Assignments*

The DOC allegedly classifies the plaintiff as a male based on the plaintiff's genitalia. Id. at ¶75. The plaintiff arrived at Kettle Moraine on February 17, 2022. Id. at ¶76. Three days later, the plaintiff allegedly wrote "to Defendants reminding them that she was a transgender-female and requested various accommodations[.]" Id. at ¶77.

In March and April 2022, defendants Sabish and Gamboa allegedly interviewed the plaintiff and said that she would receive the requested accommodations. Id. at ¶¶78-79. Gamboa and Sabish allegedly told the plaintiff that defendant Pollard also had approved the accommodations. Id. at ¶80. The plaintiff allegedly started complaining "almost immediately" about not being afforded the accommodations offered to other transgender or gender dysphoric incarcerated individuals. Id. at ¶81.

Other incarcerated individuals allegedly accosted the plaintiff during the plaintiff's "shower separate time," asking to see her breasts and, when the plaintiff refused, yelling at or threatening her. Id. at ¶82. The plaintiff allegedly complained to the correctional officer defendants about such incidents. Id. at ¶83. Specifically, on September 15, 2023, defendant Sossong allegedly yelled at the plaintiff, "I'm not a babysitter; won't monitor a bathroom; I won't stop any one from using the bathroom; you are a man in an all men's prison[.]" Id. at ¶84. On June 25, 2024, defendant Shay allegedly permitted a non-transgender

incarcerated person to use the bathroom as the plaintiff was showering. Id. at ¶85. On April 19, 2024, defendant Sossong allegedly permitted another incarcerated individual to enter the shower/bathroom area, and the individual looked over the shower curtain at the plaintiff and smiled. Id. at ¶86. On July 16, 2023, defendant Tutas allegedly allowed other non-transgender incarcerated persons to shower during the plaintiff's separate shower time. Id. at ¶87. When the plaintiff complained, Tutas allegedly spoke loudly enough for those to overhear the plaintiff's complaints about them as if she was snitching. Id. On April 12, 2024, defendant Engman allegedly allowed another non-transgender incarcerated person to shower during the plaintiff's separate shower time, and when the plaintiff complained, Engman spoke loudly enough for them to overhear the plaintiff's complaints. Id. at ¶88. On June 2, 2023, defendant Mangan allegedly denied the plaintiff access to the shower/bathroom area at the designated time for transgender incarcerated individuals. Id. at ¶90. The plaintiff allegedly has a "documented history of being physically attacked/beaten unconscious because of her Complaints of her shower separate times." Id. at ¶91.

The plaintiff allegedly complained on many occasions about Kettle Moraine having no single cells, or double cells with privacy curtains, for the safety of transgender/gender dysphoric incarcerated individuals. Id. at ¶92. The plaintiff's cellmates allegedly feigned being transgender, and the plaintiff allegedly complained about this. Id. at ¶96. Defendants Gamboa and Sabish allegedly knew that two of the plaintiff's cellmates were not transgender, and that one of them "solicit[ed] other inmate's sex for money[.]" Id. at ¶97.

The plaintiff alleges that as a transgender female forced to live with males in an all-male correctional institution, "having breasts; she cannot dress or

undress, bath[e] or shower[] in the open presence of males[.]" Id. at ¶98. The plaintiff allegedly is subject to sexual abuse and/or sexual harassment. Id. at ¶100. When rejecting sexual advancement, the plaintiff allegedly is subject to threats of violence by cellmates and other incarcerated individuals. Id. at ¶101. The plaintiff allegedly has been denied a single cell at Kettle Moraine. Id. at ¶102.

On May 1, 2022, November 13, 2023, May 29, 2024 and July 9, 2024, the plaintiff allegedly requested a transfer to a DOC institution consistent with her gender identity. Id. at ¶105. Defendants DOC, Kallas, Carr and/or Hoy, allegedly considered "irrelevant factors: criminal history; violence; prison disciplinary record; sexual preference and/or orientation; genitalia, etc., having no penological justifications to deny transferring [the plaintiff] to a female correctional institution[.]" Id. at ¶106.

The plaintiff alleges that on August 16, 2022, the Transgender Housing Committee and defendant Carr denied the plaintiff's housing request and required the completion of recommendations before she could resubmit a housing request. Id. at ¶107. Defendants Pritchard, Sabish, Gamboa and Kallas allegedly "delayed to the point of denying [the plaintiff's] programming needs be completed within 1 year as required" which "delay[ed] [the plaintiff's] request for Housing consistent with her Gender Identity." Id. at ¶110. On November 10, 2024, the Transgender Housing Committee allegedly recommended that the plaintiff be denied for transfer to a female correctional institution. Id. at ¶116. Defendant Hoy allegedly approved the recommendation on January 3, 2025. Id. at ¶117. The factors the committee considered to deny the plaintiff's transfer to a female institution allegedly were not rationally related to a legitimate state interest. Id. at ¶118. The plaintiff alleges that the

defendants in part denied the transfer to a female correctional institution in retaliation for complaints she made against "various WDOC officials[.]" Id. at ¶126.

### 3. *Medically Necessary Surgery*

The plaintiff allegedly requested sex reassignment surgery, also known as gender affirming surgery, in 2016 and again on May 1, 2022. Id. at ¶127. A DOC transgender consultant, Dr. Kyla Holly, allegedly evaluated the plaintiff for gender affirming surgery on November 14 and December 19, 2022. Id. at ¶128. Holly's report allegedly stated, "gender-affirming surgery would be beneficial for [the plaintiff] to continue her transition to her preferred gender. I expect that surgery will substantially decrease [the plaintiff's] Gender Dysphoria." Id. at ¶130.

The plaintiff alleges that on May 26 and June 23, 2023, DOC psychologist Dr. Brianna Montano evaluated the plaintiff for gender affirming surgery. Id. at ¶131. Montano allegedly recommended that the plaintiff have the surgery and referred the plaintiff for the surgery. Id. at ¶132. Montano said, "Despite hormone interventions and identity changes, [the plaintiff] has reported significant distress and dysphoria in regards to her gender." Id. at ¶132. Montano also said that "the next appropriate step is for her to undergo vaginoplasty and I believe that this will help her make significant progress in further treating her Gender Dysphoria[.]" Id. at ¶133.

On October 20, 2024, defendant Gamboa allegedly informed the plaintiff that the DOC and/or UW Gender Clinic had stopped all gender affirming surgeries for DOC transgender incarcerated individuals. Id. at ¶135. The plaintiff alleges that defendant Kallas said in an October 17, 2024 letter to the plaintiff, "[T]he UW Gender Clinic has decided to place referrals from the DOC

7

on hold due to concerns about the suitability of the candidates we are referring. We do not agree with this decision and are in ongoing negotiations with the UW Health to reverse this decision and open up the referral process again." Id. at ¶137. Kallas's letter states that the hold pertained to vaginoplasty procedures, but that orchiectomy referrals "[were] still going through." Id. at ¶138.

On March 24, 2023, the plaintiff allegedly gave testimony at a deposition and subsequently settled two lawsuits (Balsewicz v. Moungey and Balsewicz v. Bowen). Id. at ¶140. As an allegedly retaliatory measure, defendants Noble, Pollard and Sabish allegedly stopped the plaintiff from showering separately from male incarcerated individuals and started forcing the plaintiff to shower during normal movement. Id. at ¶141.

After learning of the plaintiff's "Complaints," defendant Tolle allegedly searched the plaintiff's cell and confiscated a federal declaration that another incarcerated individual had prepared for this lawsuit. Id. at ¶142. The plaintiff allegedly complained, and only part of it was returned. Id.

C.      Analysis

1.      *ADA/RA*

The plaintiff claims that defendant Lemke failed to accommodate the plaintiff's gender dysphoria, in violation of the ADA and the RA. Dkt. No. 1 at ¶151. To establish a violation of the ADA, a plaintiff must show that (1) he or she is a qualified individual with a disability; (2) he or she was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was due to his or her disability. 42 U.S.C. §12132; Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015). The RA similarly provides that no

8

"qualified individual with a disability" "solely by reason of her or his disability" may "be denied the benefits of . . . any program." 29 U.S.C. §794(a). Both the ADA and the RA require a prison to make reasonable modifications to its policies or practices to avoid denying a service on account of disability. <u>Schoch v. I.D.O.C.</u>, Case No. 22-CV-474, 2023 WL 2346278, at *1 (N.D. Ind. Mar. 2, 2023) (citing <u>Shaw v. Kemper</u>, 52 F.4th 331, 334 (7th Cir. 2022)).

Although the ADA (42 U.S.C. §12211(b)(1)) and the RA (29 U.S.C. §705(20)(F)(i)) exclude from their coverage "gender identity disorders not resulting from physical impairments," courts around the country have held that gender dysphoria is a distinct condition that does not fall within this exclusion. <u>See</u> <u>Gregory v. Buston</u>, Case No. 21-cv-4039, 2023 WL 5352887, at *17 (C.D. Ill. Aug. 21, 2023) (citing <u>Williams v. Kincaid</u>, 45 F.4th 759, 769 (4th Cir. 2022), *cert. denied*, 600 U.S. ___, 143 S. Ct. 2414 (2023) (gender dysphoria is not a "gender identity disorder," within the meaning of ADA's protection exclusion for gender identity disorders not resulting from physical impairments); <u>Blatt v. Cabela's Retail, Inc.</u>, Case No.14-CV-04822, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017) (gender dysphoria resulting in substantial limits on major life activities falls outside the ADA's exclusionary language); <u>Doe v. Mass. Dep't of Corr.</u>, Civil Action No. 17-12255, 2018 WL 2994403, at *6 (D. Mass. June 14, 2018) (drawing a distinction between gender identity disorder and gender dysphoria and suggesting that there may be a physical etiology underlying gender dysphoria sufficient to take it out of the "not resulting from physical impairments" category); <u>Venson v. Gregson</u>, Case No. 18-CV-2185, 2021 WL 673371, at *2 (S.D. Ill. Feb. 22, 2021) (based on the "unsettled state of law," unrepresented incarcerated individual allowed to proceed with an ADA claim based on disability of gender dysphoria); <u>but see</u>

9

Parker v. Strawser Constr., Inc., 307 F. Supp. 3d 744, 753-54 (S.D. Ohio 2018) (gender dysphoria not resulting from physical impairment is within the ADA's exclusionary language).

The plaintiff allegedly has been diagnosed with gender dysphoria and the court cannot say that the plaintiff's condition falls under the exclusionary language of the ADA and RA. The plaintiff alleges that while at Kettle Moraine, prison officials failed to accommodate the plaintiff's gender dysphoria by following recommendations that would have alleviated the condition such as allowing the plaintiff to shower separately, have a separate cell and transfer to a female institution. The plaintiff may proceed against the Wisconsin Department of Corrections on claims under the ADA and RA based on these allegations. See Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 670 (7th Cir. 2012) (agency was proper defendant in former incarcerated individual's claims brought under the ADA and RA).

### 2. *Eighth Amendment Medical Care*

The plaintiff claims that defendant Kallas hindered her ability to obtain medically necessary sex reassignment surgery in violation of the Eighth Amendment to the United States Constitution. Dkt. No. 1 at ¶150. The Eighth Amendment protects against cruel and unusual punishment and includes the right of incarcerated individuals to be free from "pain and suffering [that] no one suggests would serve any penological purpose." Campbell v. Kallas, 936 F.3d 536, 544 (7th Cir. 2019) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983" for violation of the Eighth Amendment. Id. at 544-45 (quoting Estelle, 429 U.S. at 103). "To succeed on an Eighth Amendment medical care claim, a plaintiff must show (1) an objectively serious

10

medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." <u>Sherrod v. Lingle</u>, 223 F.3d 605, 610 (7th Cir. 2000).

Gender dysphoria qualifies as a serious medical condition under the Eighth Amendment. <u>Campbell</u>, 936 F.3d at 545 (citing <u>Maggert v. Hanks</u>, 131 F.3d 670, 671 (7th Cir. 1997)); <u>see also</u> <u>Fields v. Smith</u>, 653 F.3d 550 (7th Cir. 2011). The court need only determine if the plaintiff sufficiently has alleged that Kallas acted with deliberate indifference.

The plaintiff alleges that after separately evaluating her, Dr. Holly and Dr. Montano recommended gender reaffirming surgery to treat her gender dysphoria. The plaintiff allegedly cannot receive the surgery because the UW Gender Clinic stopped gender affirming surgery for DOC incarcerated individuals. Defendant Kallas's failure to follow Holly's and Montano's treatment recommendation based on a blanket prohibition of gender affirming surgery may amount to deliberate indifference. <u>See</u> <u>Roe v. Elyea</u>, 631 F.3d 843, 859, 863 (7th Cir. 2011) (categorical rules against a medical procedure cannot trump reasonable medical judgment); <u>see also</u> <u>Petties v. Carter</u>, 836 F.3d 722, 733 (7th Cir. 2016) (refusal to follow medical specialist's treatment decisions can amount to deliberate indifference); <u>Pyles v. Fahim</u>, 771 F.3d 403, 409 (7th Cir. 2011) ("[I]f the defendant's chosen 'course of treatment' departs radically from 'accepted professional practice,' a jury may infer from the treatment decision itself that no exercise of professional judgment actually occurred.").

The plaintiff alleges that Kallas disagrees with the UW Gender Clinic's decision to place DOC referrals on hold for sex reassignment/gender affirming surgeries and that the DOC is trying to "reverse" the decision. But it is not clear when the ban started or, if the ban is lifted, that the plaintiff will receive the surgery. It also is not clear whether the DOC could refer the plaintiff for

11

gender affirming surgery from another medical provider. At this stage, the plaintiff may proceed on an Eighth Amendment claim against Kallas for failing to provide gender affirming surgery for the plaintiff. See Cordellioné v. Commissioner, Ind. Dep't of Corr., Case No. 23-cv-00135, 2024 WL 4333152, at *18 (S.D. Ind. Sept. 17, 2024) (A state statute's "blanket denial of access to gender-affirming surgery evinces deliberate indifference because it denies medically necessary care for those inmates suffering from severe forms of gender dysphoria."); see also Campbell v. Kallas, Case No. 16-cv-261, 2020 WL 7230235, at *6, **8-9 (W.D. Wis. Dec. 8, 2020) (ordering that sex reassignment was medically necessary and must be provided as "sex reassignment surgery is the only effective treatment" for plaintiff's "severe unremitting anatomical gender dysphoria"); Iglesias v. Fed. Bureau of Prisons, 598 F. Supp. 3d 689 (S.D. Ill. 2022) (finding that incarcerated individual met burden for preliminary injunction for medically necessary gender-affirming surgery).

### 3. *Eighth Amendment – Failure to Prevent Harm*

The plaintiff claims that the defendants violated the plaintiff's Eighth Amendment rights by allowing other incarcerated individuals to enter the bathroom/shower area when the plaintiff was showering. Dkt. No. 1 at ¶147. While the plaintiff does not reference a specific instance of physical harm while at Kettle Moraine, she allegedly previously was the victim of a physical attack that was the subject of a prior lawsuit.[1] Id.

---

[1] See Balsewicz v. Pawlyk, 963 F.3d 650 (7th Cir. 2020) (factual issues precluded summary judgment on plaintiff's Eighth Amendment claim against officer for deliberate indifference to substantial risk of harm where officer failed to take action on plaintiff's report that another incarcerated person threatened to beat up plaintiff while showering in separate shower area and two days later, did beat up plaintiff).

12

The Eighth Amendment requires prison officials to protect incarcerated persons from violence at the hands of other incarcerated persons. See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). Prison officials who do not protect one incarcerated individual from another may be found liable under the Eighth Amendment only if two requirements are met: first, the incarcerated individual must have been exposed to a risk of objectively serious harm, and second, the prison official must have had actual knowledge of that risk and responded with deliberate indifference. See LaBrec v. Walker, 948 F.3d 836, 841 (7th Cir. 2020); see also Farmer, 511 U.S. at 837-38.

Allowing male incarcerated individuals to view the plaintiff, a transgender female, while showering placed the plaintiff at risk of harm. The plaintiff may proceed against Noble, Pollard and Sabish, who allegedly stopped her separate shower time. The plaintiff may also proceed against Sossong, Tutus, Shay, Engman and Mangan, the officers who allegedly allowed other incarcerated individuals to see the plaintiff during what was supposed to be her separate shower time.

### 4. *Fourth Amendment Privacy*

The plaintiff claims that the defendants violated her Fourth Amendment right to bodily privacy when they allowed non-transgender, male incarcerated individuals to enter the bathroom and/or view the plaintiff in the nude while showering. Id. at ¶146.

Incarcerated individuals maintain a privacy interest in their bodies under the Fourth Amendment. See West v. Radtke, 48 F.4th 836, 852 (7th Cir. 2022) (citing Henry v. Hulett, 969 F.3d 769, 779 (7th Cir. 2020) ("[T]he Fourth Amendment protects a right to bodily privacy for convicted prisoners, albeit in a significantly limited way, including during visual inspections.")). Recently, in

13

a case involving a female transgender officer who viewed a male incarcerated individual during a strip search, the Court of Appeals for the Seventh Circuit distinguished between observation by members of the same sex and members of the opposite sex.

> "[W]hile all forced observations or inspections of the naked body implicate a privacy concern, it is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex." *Harris v. Miller*, 818 F.3d 49, 59 (2d Cir. 2016) (alteration in original) (quoting *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994)); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) ("The desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." (alteration in original) (quoting *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963))). That "basic fact of human behavior" sometimes allows or even requires sex-based adjustments to prison guard duties. *Smith v. Fairman*, 678 F.2d 52, 53 (7th Cir. 1982) (*per curiam*).

West v. Radtke, 48 F.4th 836, 850 (7th Cir. 2022)

The plaintiff may proceed on a Fourth Amendment claim against Noble, Pollard and Sabish, who allegedly stopped the plaintiff's separate shower time on March 24, 2023. The plaintiff may also proceed against Sossong, Tutus, Shay, Engmann and Mangan, the officers who allegedly allowed other incarcerated individuals enter the bathroom/shower area during what was supposed to be the plaintiff's separate shower time.

### 5. *Retaliation*

The plaintiff claims that Noble, Pollard, Sabish, Tutus, Sossong and Engmann retaliated against her when they learned of and commented on her complaints, which placed the plaintiff at risk of harm. Dkt. No. 1 at ¶145. The plaintiff also claims that in retaliation for the complaints, Tolle searched her cell and confiscated a federal declaration for this case. Id.

14

To plead a retaliation claim, the plaintiff must allege that "(1) he [or she] engaged in activity protected by the First Amendment; (2) he [or she] suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

Most of the plaintiff's retaliation allegations are too vague to state a plausible claim for relief because the plaintiff does not allege that specific complaints she filed were a motivating factor in a specific defendant's actions. In other words, the plaintiff has not provided enough information about which defendants acted and in retaliation for what complaints. See Iqbal, 556 U.S. at 678.

But the plaintiff *does* allege that after she testified in another lawsuit on March 24, 2023, Noble, Pollard and Sabish did not let her take separate showers anymore in retaliation for her testimony. The plaintiff may proceed on a retaliation claim against Noble, Pollard and Sabish based on these allegations.

### 6. *Equal Protection*

The plaintiff claims that the defendants violated her Fourteenth Amendment right to equal protection by not housing her according to her own gender identity and/or showering her as a transgender female. Dkt. No. 1 at ¶149.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. am XIV. "[D]iscrimination based on

15

transgender status is sex discrimination. <u>Cordellioné</u>, 2024 WL 4333152, at *18 (citing <u>Bostock v. Clayton County</u>, 590 U.S. 644 (2020); <u>A.C. v. Metro. Sch. Dist. of Martinsville</u>, 75 F.4th 760, 772 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024); <u>Whitaker *ex rel.* Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.</u>, 858 F.3d 1034, 1051 (7th Cir. 2017), *abrogation on other grounds recognized by*, <u>Ill. Republican Party v. Pritzker</u>, 973 F.3d 760 (7th Cir. 2020)).

The plaintiff may proceed on an equal protection claim against defendants Carr, Hoy, Kallas, Gamboa and Sabish for allegedly not housing her according to her own gender identity, not allowing her to shower as a transgender female and not allowing her medically necessary surgery for gender dysphoria while cisgender incarcerated individuals have access to such conditions and/or medical care. <u>See</u> <u>Cordellioné</u>, 2024 WL 4333152 at *19 (state statue violates Equal Protection Clause because it prevents transgender incarcerated persons from accessing medically necessary care while cisgender incarcerated persons have access to such care).

### 7. *Due Process*

The plaintiff asserts due process violations based on the denial of her transfer to an appropriate female correctional institution while deliberately hindering the necessary recommended cognitive treatment programs and long delays for evaluations. Dkt. No. 1 at ¶148. The plaintiff already is proceeding on claims under the ADA, RA and Equal Protection Clause based on these allegations. The plaintiff does not state a separate due process claim based on the failure to be transferred to a female institution.

### D. <u>Summary</u>

In summary, the plaintiff may proceed on the following claims: (1) ADA and RA claims against the Department of Corrections based on allegations that

prison officials failed to accommodate the plaintiff's gender dysphoria by following recommendations that would have alleviated the condition such as allowing her to shower separately, have a separate cell and transfer to a female institution; (2) an Eighth Amendment medical care claim against Kallas in his individual capacity for allegedly failing to provide gender affirming surgery for the plaintiff; (3) Eighth Amendment failure-to-protect claims against Noble, Pollard and Sabish for allegedly stopping the plaintiff's separate shower time, and against Sossong, Tutus, Shay, Engman and Mangan for allegedly allowing other incarcerated individuals to see the plaintiff while showering; (4) Fourth Amendment privacy claims against Noble, Pollard and Sabish for allegedly stopping the plaintiff's separate shower time, and against Sossong, Tutus, Shay, Engman and Mangan for allegedly allowing other incarcerated individuals to see the plaintiff while showering; (5) a retaliation claim against Noble, Pollard and Sabish for allegedly not letting the plaintiff shower separately after the plaintiff testified in another lawsuit; and (6) an equal protection claim against Carr, Hoy, Kallas, Gamboa and Sabish for allegedly not housing the plaintiff according to her own gender identity, not showering her as a transgender female and not allowing her medically necessary surgery for gender dysphoria while cisgender incarcerated individuals have access to such conditions and/or medical care. The court will dismiss defendants Chelsey Pritchard and CO Tolle because it has not allowed the plaintiff to proceed on any claims against them.[2]

---

[2] The plaintiff alleged that defendant Lemke denied her request for accommodations based on the WPATH accommodations, and the plaintiff is proceeding against the DOC under the ADA and RA based on these allegations. The plaintiff has not stated a separate claim against Lemke, but the court will not dismiss him as a defendant at this time.

17

## II.    Conclusion

The court **ORDERS** that defendants Chelsey Pritchard and CO Tolle are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Wisconsin Department of Corrections, Kevin Carr, Jared Hoy, Kevin Kallas, Jon Noble, Thomas Pollard, Maricela Gamboa, Cory Sabish, Taylor Mangan, Alexander Engman, Jamie Shay, CO Tutus and CO Sossong. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS.  It will only delay the processing of the matter.

18

The court advises that if the plaintiff fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on the plaintiff's failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is the plaintiff's responsibility to promptly notify the court if released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of the plaintiff's address may result in the court dismissing the case without further notice.

Dated in Milwaukee, Wisconsin this 9th day of July, 2026.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

19